IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

EMJ CONSTRUCTION, LLC F/K/A EMJ CORPORATION,

    PLAINTIFF,

v.                                                                 CIVIL ACTION NO.: 1:26-CV-1942

WESTERN SURETY COMPANY,

    DEFENDANT.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, EMJ Construction, LLC f/k/a EMJ Corporation ("EMJ"), by and through its attorneys, Saxe Doernberger & Vita, P.C., hereby complains and alleges as follows against Defendant Western Surety Company ("Surety"):

**PARTIES**

1. Plaintiff, EMJ, is a limited liability company organized under the laws of the State of Tennessee with its principal place of business located in Tennessee.

2. EMJ's sole member is BLDR Holdings, Inc., a Tennessee corporation with its principal place of business in Tennessee.

3. Western Surety Company is a South Dakota corporation with its principal place of business in Illinois.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

1

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the defendant is headquartered in Chicago, Illinois and a resident of this District and because a substantial part of the events and omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### The General Agreement of Indemnity

6. Pursuant to a General Agreement of Indemnity ("GAI") with EMJ dated September 12, 2018, certain Payment and Performance Bonds ("Bonds") were issued to EMJ in favor of the Secretary of Housing and Urban Development, EPT Montecillo Town Center Apartments, LLC ("EPT") and Davis-Penn Mortgage Co. in connection with a construction project owned by EPT. A copy of the GAI is attached hereto as **Exhibit A**.

7. The Bonds were issued by Western Surety Company ("Surety").

8. Pursuant to Paragraph 3 of the GAI, EMJ agreed to indemnify the Surety for losses the Surety makes "in the good faith belief of their necessity."

### The Project

9. EMJ entered into a contract with EPT as the owner to serve as the general contractor on a mixed-use multi-family and retail development located in El Paso, Texas ("Project").

10. The Project is located near the base of the Franklin Mountains and is surrounded on three sides by steep slopes.

11. One of the mixed-use buildings and one of the parking garages is located on an area of the Project referred to as "Lot C."

12. Lot C is immediately down gradient from Kings Hill, a steeply graded slope that runs from the Kings Hill Apartments down to the Project (the "Kings Hills Slope"). The Kings

Hill Slope has a history of stability failures.

13. Project work began in October 2020.

## The Loss

14. Between June and August of 2021, El Paso experienced significant rainfall resulting in footing settlement and movement at the secant pile wall on Lot C ("Loss").

15. EMJ submitted formal claims regarding these issues to EPT. Shortly thereafter, the Project Architect ("5G") advised EPT and the Project Structural Engineer ("MK") that corrective measures should be taken along the perimeter of Lot C before additional work was performed.

16. Both EPT and EMJ engaged third party consultants to evaluate the conditions at the Project.

17. EPT and EMJ disagreed regarding the conditions at the Project, the safety risks posed by those conditions, and whether continued work at the Project could be done without inviting life and safety risks.

18. Ultimately, EMJ exercised its contractual right to terminate its contract with EPT.

## The Arbitration

19. EPT filed suit against EMJ and the Surety in the District Court, 171st Judicial District, El Paso County, Texas, Cause No.2022DCV2108 seeking damages associated with the Loss.

20. Thereafter, EPT, EMJ and the Surety submitted their dispute to private arbitration before a mutually agreed-upon single arbitrator, Brian Carroll ("Arbitration").

21. A hearing was conducted in the Arbitration in October 2024.

22. On or about January 2, 2025, the arbitrator issued an arbitration award against EMJ and the Surety, which was thereafter amended on or about January 6, 2025 ("Award").

23. EMJ promptly initiated proceedings to vacate the Award in the El Paso trial court. That court confirmed the Award and entered judgment against EMJ and the Surety.

24. EMJ appealed the trial court's judgment and continues to vigorously contest the Award in its currently pending appeal to the Eighth Court of Appeals in El Paso.

**The Post Award Period**

25. Following issuance of the Award, EMJ engaged in good faith discussions with the Surety to develop an aligned strategy for challenging the Award and to provide assurance to the Surety of EMJ's commitment to pursuing the appeal.

26. The Surety engaged Charlie Gross, a third-party financial consultant ("Mr. Gross"), to conduct an evaluation of EMJ's financial health that would presumably inform any decision by the Surety to satisfy any portion of the Award.

27. EMJ cooperated fully with Mr. Gross, repeatedly and timely responding to document requests, often repetitive ones, and making EMJ personnel available for discussion.

28. EMJ produced voluminous financial records, project-level accounting, cash flow analyses, lien information, change order documentation, and other materials demonstrating EMJ's overall financial strength and ability to satisfy any ultimate obligation to pay the Award.

29. Despite EMJ's cooperation, the Surety failed to share Mr. Gross' analysis, conclusions, or methodologies with EMJ, depriving EMJ of any meaningful opportunity to address perceived concerns or correct errors.

30. Throughout the investigation and evaluation process, the Surety and Mr. Gross engaged in poor, delayed, and inconsistent communication with EMJ.

31. The Surety repeatedly accused EMJ of failing to provide documents and information requested by Mr. Gross when, in fact, such documents and information had been

provided to Mr. Gross promptly upon request.

32. It became apparent to EMJ during the investigation process that Mr. Gross' involvement was a stunt intended to depict EMJ as a financially unstable operation to support the Surety's ultimate decision to settle its obligations under the Award.

33. For example, Mr. Gross' financial analysis improperly treated disputed liens and claims as fixed liabilities, ignored EMJ's defenses and pending recovery efforts, and failed to account for EMJ's documented receivables, backlog, and ongoing operations.

34. Mr. Gross' analysis resulted in an overall net projected cash deficit to EMJ for all bonded projects of approximately *three times* the actual figure.

35. Mr. Gross' analysis painted a false and deceptive picture of EMJ's financial health and EMJ was never given an opportunity to engage in meaningful discussions with the Surety or Mr. Gross regarding his methodology.

36. EMJ was never included in any discussions between Mr. Gross and the Surety regarding Mr. Gross' financial analysis.

37. Upon conclusion of Mr. Gross' analysis, the Surety made a demand for collateral security on EMJ.

38. EMJ repeatedly offered substantial collateral to the Surety, including cash, credit, and asset-based security. If accepted, the collateral EMJ offered would have substantially and reasonably protected the Surety against risk of nonpayment.

39. During EMJ's discussions about collateral with the Surety, EMJ made numerous requests for an in-person meeting to encourage good faith efforts by both parties to work toward a resolution.

40. After many requests, the Surety finally agreed to meet with EMJ executives in

5

Chicago in July 2025.

41. The Surety executives who participated in that meeting with EMJ were unprepared and lacked even a basic understanding of the ongoing investigation and financial analysis required to make that meeting productive.

42. The Surety refused to accept EMJ's collateral offer without explanation or transparency, while simultaneously falsely asserting that EMJ had failed to provide adequate information or assurances.

43. Despite EMJ's objections, cooperation, collateral offers, and pending appeal of the Award, the Surety unilaterally settled its obligations under the Award.

44. The Surety's payment was made without a fair, transparent, or reasonable investigation, and without due consideration to EMJ's interests.

45. The Surety's payment materially prejudiced EMJ by altering the posture of the dispute to EMJ's detriment.

46. The Surety's actions were taken exclusively to advance its own financial interests at the expense of its contractual obligations and EMJ's rights.

47. On or about December 1, 2025, the Surety sent a Demand for Collateral and Indemnity and Bonds and Records to EMJ and to every single indemnitor to GAIs from 2006, 2010, 2012, 2013, 2015, 2018 and 2021.

48. All conditions precedent to the filing of this action have occurred or have otherwise been waived.

## COUNT I – BREACH OF CONTRACT

49. EMJ repeats and realleges all the allegations contained in Paragraphs 13 through 48 as if fully set forth herein.

50. The GAI is a valid and enforceable written contract.

51. EMJ performed under the GAI by, among other things, paying premiums and complying with the GAI's terms and conditions.

52. The Surety breached the GAI by, among other things:

   a. Failing to conduct a reasonable and good faith investigation;

   b. Refusing to accept reasonable collateral;

   c. Acting unilaterally and without transparency;

   d. Settling its own obligations under the Award over EMJ's objection and during a pending appeal; and

   e. Failing to give consideration to and/or protect EMJ's interests.

53. As result of the Surety's breach of the GAI, EMJ has suffered, and continues to suffer, damages.

## COUNT II – BAD FAITH

54. EMJ repeats and realleges all the allegations contained in Paragraphs 13 through 53 as if fully set forth herein.

55. The Surety owed EMJ a duty of good faith and fair dealing in performing its contractual obligations under the Bonds and GAI.

56. The Surety breached its good faith duties by acting vexatiously, unreasonably, and without honest judgment in investigating, evaluating, and paying a portion of the Award in order to settle its own obligations under the Award.

57. Further, the Surety's failure to comply with its good faith obligations under the Bonds and GAI demonstrated a gross disregard for EMJ's interests, including by disregarding EMJ's ongoing appeal of the Award.

7

58. The Surety's breaches of its good faith duties include, among other things:

   a. An outright lack of transparency;

   b. Disregarding and mischaracterizing EMJ's cooperation;

   c. Refusing to accept collateral; and

   d. Jeopardizing and disregarding EMJ's appellate rights.

59. As a result of the Surety's bad faith conduct, EMJ has suffered, and continues to suffer, damages.

## COUNT III – DECLARATORY JUDGMENT

60. EMJ repeats and realleges all the allegations contained in Paragraphs 13 through 48 as if fully set forth herein.

61. The GAI provides, in pertinent part, that EMJ may be required indemnify the Surety "in the event of any payments made by the Surety in good faith and belief of their necessity."

62. The Surety's satisfaction of its obligations under the Award was not made in good faith and was not necessary.

63. The Surety has nonetheless demanded payment from EMJ pursuant to the GAI.

64. In view of the foregoing, there exists a bona fide, actual, present, and practical need for a declaration of the parties' rights and duties, if any, under the GAI.

65. EMJ seeks a declaration that:

   a. The Surety breached the GAI by settling its own obligations under the Award without acting in good faith;

   b. The Surety is not entitled to reimbursement or indemnification for the payment;

   c. The Surety's conduct violated the implied covenant of good faith and fair

dealing; and

d.  EMJ is entitled to appropriate equitable and monetary relief arising from the Surety's conduct.

## PRAYER FOR RELIEF

WHEREFORE, EMJ respectfully requests that the Court:

1. Enter declaratory judgment in EMJ's favor;

2. Award compensatory damages in an amount to be proven at trial;

3. Award consequential and punitive damages;

4. Award attorneys' fees and costs pursuant to applicable law and rules of court;

5. Award pre- and post-judgment interest; and

6. Any such other and further relief as the Court deems just and proper.

## JURY DEMAND

EMJ demands a trial by jury on all issues so triable.

Dated: February 20, 2026.

/s/ Gregory D. Podolak
SAXE DOERNBERGER & VITA, P.C.
Gregory D. Podolak (426213)
Rachel S. Pearson (*PHV application forthcoming*)
999 Vanderbilt Beach Rd., Ste 603
Naples, FL 34108
GPodolak@sdvlaw.com
P: 239-316-7244

*ATTORNEYS FOR PLAINTIFF*
EMJ Construction, LLC f/k/a
EMJ Corporation